[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-14326
_____

D.C. Docket No. 0:18-cv-61069-MGC


GEORGE CORNEA,

Petitioner - Appellant

versus

UNITED STATES ATTORNEY GENERAL,
SECRETARY OF STATE,

Respondents - Appellees.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(May 7, 2019)

Before WILSON, JILL PRYOR and TALLMAN,[*] Circuit Judges.

JILL PRYOR, Circuit Judge:

Greece requested that the United States extradite George Cornea so that Greece can prosecute him for allegedly committing a murder in 1994. Cornea filed a habeas petition challenging the extradition, which the district court initially granted. The court later reversed itself and denied Cornea's habeas petition based on newly discovered evidence in a motion under Federal Rule of Civil Procedure 59. Cornea now appeals, arguing that the district court erred in granting the Rule 59 motion because the evidence was not "new," and even if it was, it did not support the district court's ruling.[1] We affirm the district court's grant of the motion for reconsideration based on manifest error of law.

## I.  BACKGROUND

After decades of investigating, Greek officials indicted Cornea for a 1994 murder.[2] Greek authorities discovered that Cornea was living in Miami, Florida. In 2017, Greece requested Cornea's extradition from the United States under the extradition treaty between the two countries. *See* Treaty of Extradition Between

---

[*] Honorable Richard C. Tallman, United States Circuit Judge for the Ninth Circuit, sitting by designation.

[1] Cornea also filed a motion to accept his reply brief as timely filed. That motion is granted.

[2] The victim was killed by repeated blows to the head. His hands were bound with a telephone cord. Cornea's bloody fingerprint was found at the scene.

the United States of America and the Hellenic Republic, Greece-U.S., May 6, 1931, 47 Stat. 2185 (the "Treaty").  Under Article V of the Treaty, extradition is inappropriate where the requesting country's statute of limitations for the underlying crime has lapsed.  *Id.* art. V.  Under Greek law, the statute of limitations for murder is generally 20 years from the commission of the crime.  Poinikos Kodikas (P.K.) (Criminal Code), art. 111.  But the statute of limitations may be extended up to five years when a defendant's domicile is unknown and he fails to appear or be arrested within a month of service of the indictment.  *Id.* art. 113; Kodikas Poinikes Dikonomias (KPoi.D.) (Code of Criminal Procedure), art. 432.  For the extension to be proper, a defendant whose residence is unknown must be served with the indictment in accord with Greek Code of Criminal Procedure Article 156.  Service may be accomplished under Article 156 in two ways: (1) service on a close family member at the person's residence; or (2) if no close relative is "found at the residence of the individual the service is intended for," service by publication through the mayor of the Greek city where the person last resided.  *See* HC-Doc. 13 at 29 (translation of Article 156).[3]

---

[3] All citations to events in Cornea's habeas case are denoted "HC-DE #" and refer to entries on the district court docket in case number 18-61069-CV-COOKE/SNOW.  Citations to events in Cornea's extradition case are denoted "EX-DE #" and refer to events on the district court docket in case number 18-60132-CV-HUNT.

3

In 2013, Greek authorities located Cornea's mother in Romania, but they were unable to locate Cornea. Greece thus chose to effect service by publication. Greek officials served the mayor of Thessaloniki, where the murder occurred and where Cornea's last known Greek residence was located. When Cornea failed to appear and was not arrested within one month of service, Greek prosecuting authorities issued a decree stating that the limitations period had been extended by five years, lapsing on July 25, 2019.

In response to Greece's request for extradition, the United States initiated extradition proceedings in the Southern District of Florida. Cornea was arrested and remains incarcerated pending resolution of this case. Cornea argued in the extradition proceedings that his extradition would be improper because Greek authorities failed to properly serve him with the indictment under Article 156, making the five-year extension of the statute of limitations ineffective. Cornea asserted that the limitations period lapsed in July 2014; thus his extradition would be inappropriate under the Treaty. In support of his argument, Cornea submitted the opinion of an expert in Greek law. Cornea's expert, who has a Ph.D. in criminal law and procedure from a Greek university, opined that Greek authorities were required to effect service under the first paragraph of Article 156 because Greek authorities had located his mother—a close relative listed in the first paragraph of Article 156—in Romania where, Cornea's mother told Romanian

4

investigators in 2013, he had last resided before moving to Miami in 1998. The extradition court held a hearing and issued an order certifying Cornea's extraditability.

Cornea then filed a habeas corpus petition under 28 U.S.C. § 2241. He attached his expert's opinion to the habeas petition. The magistrate judge agreed with Cornea, issuing a Report and Recommendation ("R&R") concluding that, "[a]bsent evidence of proper service according to Greek law, the Court cannot find a reason to accord legal weight to the . . . decree attempting to suspend the limitations period beyond July 2014." HC-Doc. 13 at 22.

The United States filed objections to the R&R, including additional information provided by Greek authorities. That information explained, among other things, that the tolling order had the "[l]egal effect of . . . extend[ing] [the twenty-year statute of limitations] for five more years"; service of the indictment on the mayor of Thessaloniki was "absolutely legal according to the Greek law"; and service could not have been effected on Cornea's mother because Cornea "was not staying in Romania at his mother's address" as required by Article 156. HC-Doc 19-1 at 3, 7. The district court adopted the R&R in full and granted Cornea's habeas petition.

The government filed a motion for reconsideration under Federal Rule of Civil Procedure 59(e). In the motion, the United States presented more

information from Greek authorities, including an explanation from Hellenic officials that Greece could not have legally served Cornea's mother because Cornea did not reside in Romania and his whereabouts were unknown. The United States also submitted the Greek officials' proof of service on the mayor of Thessaloniki; the proof of service stated that Cornea was "absent from his residence and ha[d] no known address, and . . . no person exist[ed] in this residence or elsewhere" who could have been properly served under Article 156. HC-Doc. 33-1 at 8. Finding these statements to be newly discovered evidence, the district court granted the government's Rule 59(e) motion, reversing itself and denying Cornea's habeas petition. Cornea appealed.

## II. DISCUSSION

"The decision to alter or amend judgment is committed to the sound discretion of the district judge and will not be overturned on appeal absent an abuse of discretion." *Am. Home Assurance Co. v. Glenn Estess & Assoc., Inc.*, 763 F.2d 1237, 1238–39 (11th Cir. 1985). An abuse of discretion exists where the district court made a clear error in judgment or applied the incorrect legal standard. *See Weatherly v. Ala. State Univ.*, 728 F.3d 1263, 1270 (11th Cir. 2013). A motion to reconsider may be granted upon "newly-discovered evidence or manifest errors of law or fact." *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007) (internal quotation marks omitted). "Issues of foreign law are questions of law," Fed. R.

6

Crim. P. 26.1; we thus review a district court's determination of foreign law *de novo*. *Escobio v. Am. Int'l Grp., Inc.*, 262 F.3d 1207, 1211 (11th Cir. 2001).

"[E]xtradition is an executive function and habeas corpus review of a magistrate judge's certification of extraditability is limited to deciding whether the magistrate had jurisdiction, whether the offense charged is within the treaty and, by a somewhat liberal extension, whether there was any evidence warranting the finding that there was reasonable ground to believe the accused guilty." *Yapp v. Reno*, 26 F.3d 1562, 1565 (11th Cir. 1994) (internal quotation marks omitted). On habeas review of a magistrate judge's certification, the court is tasked with "reviewing whether the demanding country has complied with its own law . . . to the limited extent necessary to ensure compliance with the applicable extradition treaty." *Skaftouros v. United States*, 667 F.3d 144, 156 (2d Cir. 2011); *see also United States ex rel. Petrushansky v. Marasco*, 325 F.2d 562, 565 (2d Cir.1963) (Thurgood Marshall, J.) (stating that in a habeas challenge to extradition, the role of a U.S. court is "limited to ensuring that the applicable provisions of the treaty and the governing American statutes are complied with").

Cornea argues that his extradition would violate Article V of the Treaty between the United States and Greece, which forbids extradition if the statute of limitations has run. *See* Treaty art. V. The statute of limitations for the crime for which Cornea was charged is 20 years. Greek authorities maintain that they

extended the statute of limitations under Article 113 of the Greek Criminal Procedure Code by serving the mayor of Thessaloniki pursuant to Article 156(2) of that code.  Cornea contends that the Greek government's service was improper because Greek officials were required to serve his mother in Romania under Article 156(1) before resorting to service under Article 156(2).

Generally, federal courts' review of whether a foreign state complied with its statute of limitations is a relatively straightforward task.  But in this case, Cornea's challenge to extradition raises questions about Greek officials' compliance with Greece's criminal procedure code.  *See Skaftouros*, 667 F.3d at 156, 158 (a judge is not required to "wield a rubber stamp" when presiding over an extradition hearing, but "[a]ny arguments regarding the demanding country's compliance with its own laws . . . are properly reserved for the courts of that country").  This difficulty does not absolve us of our obligation to ensure that the United States abides by its treaty obligations.  *See In re Assarsson*, 635 F.2d 1237, 1241 (7th Cir. 1980) (stating that in reviewing a habeas decision in an extradition case, the court conducts a limited review of "those conditions [that] preclude extradition for offenses [that] are otherwise extraditable," but that "[a]ny such conditions must come from the treaty itself").  We undertake this inquiry, however, acknowledging both our limited scope of review and the special foreign policy considerations inherent in the extradition context.  *See id*. at 1244 ("[T]he narrow

scope of review is based on respect for the sovereignty of other nations.  .  .  .  This respect is embodied in the procedural framework of international extradition, which gives to the demanding country advantages most uncommon to ordinary civil and criminal litigation." (internal quotation marks omitted)).

Statements from a foreign government explaining its nation's laws constitute evidence of the law of that foreign nation.  *See, e.g.*, *Basic v. Steck*, 819 F.3d 897, 901 (6th Cir. 2016) (relying on statement of Bosnian Ministry of Justice for proposition of Bosnian law); *cf. Animal Sci. Prods., Inc. v. Herbei Welcome Pharm. Co.*, 138 S. Ct. 1865, 1869 (2018) (noting in the context of foreign government amicus briefs that federal courts "should accord respectful consideration to a foreign government's submission").  In granting Cornea's habeas petition, the district court overlooked evidence from Greek authorities, filed by the United States in objecting to the magistrate judge's R&R, that rebutted Cornea's expert's interpretation of Greek law.  *See* HC-Doc 19-1 at 3, 7.  Among that evidence was a July 26, 2018 letter from Greece's Ministry of Justice, Transparency, and Human Rights—the agency tasked with interpreting Greek law.[4]  The letter explained that Article 156(1) permitted service of process on close family members only when they were living at the residence of the person for

---

[4] Cornea has never disputed that the Greek Ministry of Justice, Transparency, and Human Rights is the authority in charge of interpreting Greek law.

whom the indictment was intended. *See* HC-Doc. 19-1 at 7 ("The mother was not served with the November 2013 decree because the extradited person was not staying in Romania at his mother's address so his mother was not a co-habitant."). That is, because her son had moved out of her home in 1998, Cornea's mother could not be served with his indictment under Article 156(1) in 2013, when Greek authorities located her in Romania.

The Greek government's statement in its July 26, 2018 letter—provided through diplomatic channels, offered by the agency tasked with interpreting Greek laws, consistent with the Greek authorities' past positions expressed in this case, and well-supported by the Greek Code of Criminal Procedure—established that the Greek authorities were not required to serve the indictment on Cornea's mother in Romania, as Cornea argues. Rather, Article 156 permitted them to serve the mayor of the city of his last-known Greek residence, *i.e.*, Thessaloniki. Because service of the indictment was proper and Cornea failed to appear, the statute of limitations was extended for five years. *See* Poinikos Kodikas (P.K.) (Criminal Code), art. 113; Kodikas Poinikes Dikonomias (KPoi.D.) (Code of Criminal Procedure), art. 432. In failing to follow this authoritative statement, which is supported by a plain reading of Greek criminal procedure, the district court initially made a manifest error of law.

The Court may affirm "on any ground supported by the record—even if that ground was not considered or advanced in the district court." *United States v. Gill*, 864 F.3d 1279, 1280 (11th Cir. 2017).[5]  In light of the July 26, 2018 letter from the Greek government concerning the proper interpretation of Article 156—which referred to and supported other information provided by Greek officials—the district court's determination that the Greek government failed to properly serve Cornea, and therefore that extradition was barred under Article V of the Treaty, was manifest error.  We affirm the district court's order granting the government's Rule 59(e) motion to correct this manifest error.

**AFFIRMED.**

---

[5] The district court granted the Rule 59 motion based on newly discovered evidence.  To succeed on a Rule 59(e) motion based on newly discovered evidence, "the movant must show either that the evidence is newly discovered or, if the evidence was available at the time of the decision being challenged, that counsel made a diligent yet unsuccessful effort to discover the evidence." *Chery v. Bowman*, 901 F.2d 1053, 1057 n.6 (11th Cir. 1990).  Because the district court committed a manifest error of law, we need not decide whether the evidence was new or whether the United States with diligence could have obtained the evidence earlier.

11